**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:26-cv-00686-RMR

PEDRO ENRIQUE ZAYAS RODRIGUEZ,

    Petitioner,

v.

JUAN BALTASAR,  in his official capacity as Warden, Aurora ICE Processing Center;
TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement;
KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; and
PAM BONDI, in her official capacity as Attorney General of the United States,

    Respondents-Defendants.

---

## ORDER

---

Pending before the Court is Petitioner Pedro Enrique Zayas Rodriguez's ("Mr. Zayas Rodriguez" or "Petitioner") First Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 5, and Motion for Temporary Restraining Order add/or Preliminary Injunction ("Motion"), ECF No. 2. Respondents filed a Response to the Motion, ECF No. 11, and Mr. Zayas Rodriguez filed a Reply to the Response, ECF No. 12. The Court has reviewed the Petition, the Motion, the related briefing, and the applicable case law. For the reasons stated below, the Petition, ECF No. 5, is DENIED and the Motion, ECF No. 2, is DENIED.

## I.    BACKGROUND

Mr. Zayas Rodriguez is a 36-year-old citizen of Cuba. ECF No. 5 at 5. He was lawfully admitted to the United States on or about June 29, 2000, and later adjusted his status to Lawful Permanent Resident ("LPR"). *Id.* at 1. On January 18, 2008, Mr. Zayas Rodriguez was convicted of Aggravated Robbery with Intent to Kill, Miam, or Wound, with a Deadly Weapon in violation of C.R.S. § 18-4-302(1)(a) and sentenced to 12 years in prison. ECF No. 11 at 2. His sentence was suspended on the condition that he complete 6 years in the Youthful Offender System. *Id.* Petitioner was also convicted of Harassment-Strike/Shove/Kick in violation of C.R.S. § 18-9-111(1)(a) on July 19, 2010 and sentenced to 90 days in jail. *Id*. The United States revoked Mr. Zayas Rodriguez's LPR status. ECF No. 5 at 5.

Immigration and Customs Enforcement ("ICE") encountered Mr. Zayas Rodriguez on Janaury 13, 2014, upon his release from the Colorado Department of Corrections. ECF No. 11 at 2. ICE determined he was subject to removal and detained him pending resolution of removal proceedings. *Id.* Petitioner received an order of removal by the Aurora Immigration Court on February 21, 2014. ECF No. 5 at 5*.* Petitioner was released on an Order of Supervision ("OSUP") on June 16, 2014. *Id*. at 5*.* After his release on OSUP, Mr. Zayas Rodriguez was convicted of: (1) Driving under Restraint; (2) Obstructing a Peace Officer; (3) Possession of a Controlled Substance; and (4) Distribution of a Controlled Substance. ECF No. 11 at 4. Petitioner was also arrested for the charge of Habitual Traffic Offender, Driving after Revocation, on February 2, 2026. *Id*. He posted bond and was subsequently re-detained by Immigration and Customs Enforcement

("ICE") on the same day. ECF No. 5 at 5. Mr. Zayas Rodriguez remains in ICE custody as of the date of this order. ECF No. 11 at 5.

ICE is pursuing Mr. Zayas Rodriguez's removal to a third country via 8 U.S.C. § 1231(b) and served him with a Notice of Removal to Mexico on February 4, 2026. *Id*. at 4. Mr. Zayas Rodriguez refused to sign the notice and claimed fear of persecution in Mexico. *Id.* U.S. Citizenship and Immigration Services ("USCIS") conducted a third country screening interview and on February 27, 2026, determined that Mr. Zayas Rodriguez did not establish that it is more likely than not that he will be persecuted or tortured in Mexico. *Id.* ICE served Mr. Zayas Rodriguez's with another notice of removal to Mexico on March 18, 2026, and he refused to sign the notice. *Id*. at 4-5. On April 9, 2026, ICE served Mr. Zayas Rodriguez with a Notice to Alien of Interview for Review of Custody Status and he indicated he did not want an interview. *Id*. Mexico has agreed to accept Mr. Zayas Rodriguez. ECF No. 16 at 2.

## II.    LEGAL STANDARD

### A.    Habeas Corpus Relief

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings under 28 U.S.C. § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also*

*Hernandez-Ceren v. Wolf*, No. 20-cv-01628-RM, 2020 WL 3036074, at \*1 (D. Colo. June 6, 2020) ("[A] person subject to removal is in custody for habeas purposes.")

The writ of habeas corpus is designed to challenge "the fact or duration" of a person's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "In other words, habeas corpus, and thus § 2241, offers detainees release from custody when the very fact that they are detained, or detained for a certain length of time, is unlawful." *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at \*4 (D. Colo. May 27, 2020).

### B.     Post-Removal Detention Under § 1231

Two sections of the Immigration and Nationalization Act ("INA") authorize detention—8 U.S.C. § 1226, which concerns noncitizens who are not yet subject to a removal order, and 8 U.S.C. § 1231, which operates in the post-removal context. Petitioner is detained pursuant to § 1231. Under § 1231, "when a [noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." § 1231(a)(1). The noncitizen must be detained during this initial 90-day timeframe, *see* § 1231(a)(2), which is "referred to as the 'removal period,'" § 1231(a)(1)(A). If the noncitizen "does not leave or is not removed within the removal period," then he or she is normally subject to supervised release. § 1231(a)(3). However, certain categories of noncitizens who have been ordered removed—including inadmissible or criminal noncitizens, or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the removal order—"may be detained beyond the removal period." § 1231(a)(6). The text of the INA does not contain an express limit on the duration a noncitizen may be detained under its authority.

### C.    Temporary Restraining Order and/or Preliminary Injunction

Federal Rule of Civil Procedure 65 authorizes a district court to enter preliminary injunctions and issue temporary restraining orders ("TRO"). Fed. R. Civ. P. 65(a), (b). The decision whether to issue a TRO is committed to a district court's sound discretion. *Allen W. Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.*, 64 F.2d 881, 884 (10th Cir. 1933); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2951 (3d ed. 2023) ("The issuance of a temporary restraining order is a matter that lies within the discretion of the district court.") The procedure and standards for determining whether to issue a TRO mirror those for a preliminary injunction. *See Emmis Commc'ns Corp. v. Media Strategies*, Inc., No. CIV. A. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citation omitted). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018).

To succeed on a motion seeking preliminary injunctive relief, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quotations and citation omitted). Granting such "drastic

relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

Certain types of preliminary injunctions, such as injunctions that alter the status quo or injunctions that require the nonmoving party to take some affirmative action, "are disfavored." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021). To obtain a "disfavored" injunction, the moving party must "make a heightened showing of the four factors." *RoDa Drilling*, 552 F.3d at 1209; *Colorado v. Griswold*, 99 F.4th 1234, 1240 n.4 (10th Cir. 2024). "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors"—the movant must make a "strong showing" that these factors tilt in his or her favor. *Id.*

### III.    ANALYSIS

#### A.    Habeas Relief Under 28 U.S.C. § 2241 (ECF No. 1)

##### 1.    Revocation of Order of Supervision

Petitioner claims that the revocation of his OSUP violates his due process rights. ECF No. 5 at 6-8. Petitioner's allegations here seem to be threefold: (1) the revocation itself is invalid; (2) he was denied notice and an opportunity to be heard; and (3) his OSUP was revoked by an improper party. This Court disagrees with Petitioner for the reasons outlined below.

First, Pursuant to 8 C.F.R § 241.4 (I)(2), "Release may be revoked in the exercise of discretion when, in the opinion of the revoking official: (i) The purposes of release have

been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." Respondents allege that Petitioner's OSUP was revoked in accordance with sections (i), (iii) and (iv). ECF No. 11 at 10. It is undisputed that in between the time he was granted his OSUP in 2014 and his re detention in 2026, Petitioner was convicted of multiple crimes. ECF No. 11 at 4. These additional convictions reasonably serve as a change in circumstances in accordance with (iv) where release would no longer be appropriate due to danger to the community and/or flight risk. This Court finds that here (iv) serves as an adequate basis to revoke Petitioner's OSUP.

Second, Petitioner claims that he did not receive proper notice or an opportunity to be heard after the revocation of his OSUP. 8 C.F.R § 241.4 (I)(1) expressly requires, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." But, Respondents revoked Petitioner's OSUP under 8 C.F.R § 241.4 (I)(2), which does not expressly require notice or an opportunity to be heard as in 8 C.F.R § 241.4 (I)(1). Given this essential difference in the language of the statute, this Court finds that the alleged lack of notice and opportunity to be heard regarding the revocation of his OSUP does not violate Petitioner's Due Process rights.

Lastly, Petitioner relies upon an out of district, non-binding case, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025), to allege that only certain officials are able to revoke an OSUP. ECF No. 5 at 8. Neither Petitioner nor Respondents have provided this Court with any specific information about who authorized the revocation of Petitioner's OSUP. Petitioner simply claims that the OSUP was not revoked by the ICE Executive Associate Director but does not provide any identifying information about the officer who did revoke the OSUP. ECF No. 5 at 12-13. As such, this Court is not persuaded by Petitioner's argument that an unauthorized party revoked his OSUP.

Therefore, the Court finds that the revocation of Petitioner's OSUP did not violate his due process rights.[1]

### 2. Detention Should be Considered Cumulatively Under 8 U.S.C. § 1231

Petitioner contends that the six-month standard outlined in *Zadvydas* should be considered cumulatively. *Id.* Respondents disagree and purport that each detention should be considered separately. ECF No. 11 at 5-8. This Court agrees with Petitioner.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) "does not permit indefinite detention," although the statute does not specify a time limit on how long the DHS may detain a noncitizen in the post-removal period. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Rather, "in light of the Constitution's demands," a noncitizen may be detained only for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id*.; *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). The

---

[1] *See also Anthony Jonathan Hernandez Montes v. Dawn Ceja et al.,* 2026 WL 1469231, at *3 n.2 (D. Colo. May 26, 2026) (determining that petitioner's failure to sign a Notice of Removal dooms all of habeas arguments, including improper OSUP revocation.)

Supreme Court reasoned that "Congress previously doubted the constitutionality of detention for more than six months" and recognized six months as presumptively reasonable. *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Judge Sweeney recently conducted an analysis based on a similar set of facts. *See Tran v. Baltazar*, 1:26-cv-00940-CNS, 2026 WL 764002 (D. Colo. Mar. 18, 2026) ("*Tran*").[2] In *Tran*, the petitioner, Mr. Tran, was a citizen of Vietnam and became a lawful permanent resident of the United States in 1992. *Id*. at *1. In 1995, Mr. Tran was convicted of criminal trespass and sentenced to 12 months on probation. *Id.* Mr. Tran received a final order of removal from an Immigration Judge on August 12, 2003. *Id*. He spent at least three months in custody before he was released. *Id*. In November 2025, Mr. Tran was re-detained at an annual check-in with immigration authorities. Mr. Tran alleged that in total, between 2003, 2025, and 2026, ICE jailed him for approximately 212 days. *Id*. at *3.

In her order in *Tran*, Judge Sweeney adopted the reasoning of other courts in the District of Colorado, holding that when determining presumptively reasonable time under *Zadvydas*, periods of detention should be determined cumulatively. *Id*. (citing *Aguilar v.*

---

[2] *See also Nguyen v. Baltazar, et al.*, 1:26-cv-01168-RMR (D. Colo. May 14, 2026).

*Noem*, 25-cv-03463-NYW, 2025 WL 3514282, at *3 (D. Colo. Dec. 8, 2025) (collecting cases); *see also, e.g.*, *Pena-Gil v. Lyons*, 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *2 (D. Colo. Nov. 24, 2025) (concluding the same and collecting cases in support of its determination that even though "petitioner's 20-month and five-month periods of detention [were] served nonconsecutively, petitioner has nonetheless been detained longer than the six-month presumptively reasonable period")). Relying on this standard, Judge Sweeney ultimately determined that, "[b]ecause Petitioner has demonstrated that he has been cumulatively held in immigration detention for over six months (including at least three months in 2003, plus over four months since Petitioner was re-detained in November 2025), the 'presumptively reasonable period for [Petitioner's] detention has been exceeded.'" *Id*.

In the present case, it is undisputed that Mr. Zayas Rodriguez was in ICE custody from February 21, 2014, through June 16, 2014, and again starting on February 3, 2026. ECF No. 5 at 2 and ECF No. 11 at 3. Respondents allege the presumptively reasonably six-month time period established by *Zadvydas* ("*Zadvydas* Period") should not be considered cumulatively and should begin on February 3, 2026, the date of re-detention. ECF No. 11 at 7. Petitioner alleges the *Zadvydas* Period begin on February 21, 2014, the date of his removal order. ECF No. 12 at 2. Following Judge Sweeney's analysis from *Tran*, the presumptively reasonable time period for Mr. Zayas Rodriguez's immigration detention should be calculated cumulatively. Mr. Zayas Rodriguez has demonstrated that he has been in ICE custody for over six months, cumulatively, as of the date of this order.

10

Thus, the Court finds that Mr. Zayas Rodriguez has been detained beyond the presumptively reasonable time period under *Zadvydas*.

### 3. Removal is Significantly Likely in the Reasonably Foreseeable Future

Under *Zadvydas*, once the 6-month period has lapsed and the petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Petitioner alleges that Respondents do not meet this standard and do not show that Petitioner's removal to Mexico is significantly likely in the reasonably foreseeable future. This Court disagrees with Petitioner.

Again, Judge Sweeney recently considered a very similar set of facts involving a Petitioner's refusal to sign a Notice of Removal. See *Anthony Jonathan Hernandez Montes v. Dawn Ceja et al.,* 2026 WL 1469231, at *2 (D. Colo. May 26, 2026) ("*Hernandez Montes*")[3]. In *Hernandez Montes* Petitioner was a Nicaraguan citizen who refused to sign a third country Notice of Removal. *Id.* Judge Sweeney reasoned that, "[f]undamentally, Petitioner's acknowledged refusal to sign the Notice of Removal 'does not raise the specter of indefinite detention that might otherwise give rise to a valid habeas claim.'" *Id.* (citing to *Alhadje v. Guadian*, No. 1:25–cv– 04153–CNS, 2026 WL 783726, at *1 (D. Colo.

---

[3] See *Anthony Jonathan Hernandez Montes v. Dawn Ceja et al.,* 2026 WL 1469231, at *2 (D. Colo. May 26, 2026) (citing to *Lema v. I.N.S.*, 341 F.3d 853, 857 n.7 (9th Cir. 2003) ("[R]emovable aliens should not be rewarded with release into the United States for their bad behavior in refusing to assist officials to effect their removal." (citation modified);  See also *Singh v. Barr*, WL 2452822, at *4 (D. Colo. June 12, 2019) ("And, as in *Abiodun* but unlike *Zadvydas*, there is no showing that India would not receive [the petitioner], and his continued detention is of his own doing." (citation modified))

Mar. 20, 2026) (quoting *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008)). Judge Sweeney ultimately held that "Petitioner's refusal to sign such a document is fatal to his request for habeas relief" and denied his Habeas petition. *Id.*

Importantly, a key factual difference exists between *Hernandez Montes* and the present case. Respondents in *Hernandez Montes* did not have definite approval from the removal country that it would accept petitioner. *Id.* Even so, Judge Sweeney deemed a petitioner's refusal to sign a Notice of Removal fatal to his request for habeas relief. *Id.* Here, this Court issued order to Show Cause instructing Respondents to indicate whether Mexico or any other country has agreed to accept Petitioner. ECF No. 13. In their Response, Respondents indicated that Mexico has agreed to accept Petitioner. ECF No. 16. at 1. In accordance with Judge Sweeney's analysis in *Hernandez Montes*, the added fact that Mexico expressly agrees to accept Petitioner weighs strongly in Respondents favor.

Accordingly, the Court finds that Respondents have made a clear showing that the only thing preventing Respondents from effectuating Petitioner's removal is Petitioner's own refusal to sign the Notice of Removal. Respondents contend that as soon as Petitioner signs the notice of removal, he will be removed to Mexico. *Id.* Thus, even though Petitioner has cumulatively been in custody for over six months, there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future and Petitioner's refusal to sign the Notice of Removal is fatal to his request for habeas relief. See e.g. *Zadvydas*, 533 U.S. at 701 ("This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary,

12

an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.") As such, the Court holds that ICE's detention of Mr. Zayas Rodriguez does not violate 8 U.S.C. § 1231.[4]

### B.    Motion for Temporary Restraining Order And/or Preliminary Injunction

Next, the Court addresses Petitioner's motion for temporary restraining order and/or preliminary injunction. The Court first addresses Petitioner's likelihood of success on the merits. Because Petitioner seeks a disfavored injunction, he must make a "heightened showing" on this factor. *RoDa Drilling*, 552 F.3d at 1208. The Court finds that Petitioner has not demonstrated a likelihood of success on the merits because the Court has already determined that the claims within the Petition do not state a violation of constitutional or federal rights. Because Petitioner has failed to demonstrate a likelihood of success on the merits, the Court does not address the remaining elements for a temporary restraining order or preliminary injunction. See *Winter*, 555 U.S. 7 at 23-24 (holding that "[a] proper consideration" of the balance of equities and public interest "alone requires denial of the requested injunctive relief" and, therefore, declining to address the likelihood of success on the merits); *see also Big O Tires, LLC v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) (declining to address every factor because "the resolution of them will have no bearing on the outcome").

---

[4] Should Petitioner ultimately sign the Notice of Removal but Respondents nonetheless fail to timely remove him, or attempt to remove him in contravention of any governing legal authority, he may file another habeas petition.

## IV.     CONCLUSION

For the reasons stated above, it is ORDERED that Mr. Zayas Rodriguez's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 5, is **DENIED**, and Motion for a Temporary Restraining Order And/Or Preliminary Injunction, ECF No. 2, is also **DENIED**. Because the Court finds that Petitioner's refusal to sign the Notice of Removal is fatal to his claim for habeas relief, the Court need not address Petitioner's remaining arguments at this time

DATED: June 5, 2026

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge